Oneil Patrick LOVELL, Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

**No. 766, Docket 94–4010.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 7, 1994.

Decided April 17, 1995.

John L. Sander, Paul, Hastings, Janofsky & Walker, New York City, for petitioner.

Diogenes P. Kekatos, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty.

for the S.D. New York, Marla Alhadeff, Asst. U.S. Atty., on the brief), for respondent.

Before: KEARSE and WINTER, Circuit Judges, and OWEN, District Judge.*

OWEN, District Judge:

Oneil Patrick Lovell petitions this Court to review a January 13, 1994 order of the Board of Immigration Appeals (BIA) denying him a waiver of deportation and ordering him deported to Guyana. Petitioner is serving a five year federally-imposed sentence in the Big Spring Correctional Center, Big Spring, Texas, on a plea of guilty to drug distribution. He contends that his motion before an immigration judge at Big Spring to change the venue of his deportation hearing to New York City was summarily and improperly denied, thus prejudicing his application for a discretionary waiver of deportation pursuant to § 212(c) of the Immigration and Nationality Act.[1] Lovell seeks a remand for "a reasoned determination of his application for a change of venue", and thereafter for a "genuine consideration of [his] application for discretionary relief."

Petitioner, a native of Guyana, was lawfully admitted to the United States in 1986 when he was thirty years of age. In 1991, he pleaded guilty in a federal court in North Carolina to the distribution of crack cocaine and aiding and abetting such distribution, and received the said sentence of five years. On November 4, 1992, pursuant to the Immigration and Nationality Act, the Immigration and Naturalization Service (INS) commenced deportation proceedings against petitioner as an alien convicted of an aggravated felony and a controlled substance violation. 8 U.S.C. §§ 1251(a)(2)(A)(iii), 1251(a)(2)(B)(i).

Petitioner's deportation hearing began on February 4, 1993, at the Big Spring Correctional Facility in Big Spring, Texas, the place of his incarceration. At the first session, petitioner requested time to obtain an attorney and a change of venue to New York. Immigration Judge Jeffrey Zlatow ruled that he could not consider the venue issue because petitioner was not in the custody of the Immigration and Naturalization Service, stating: "Sir, where you are incarcerated is up to the federal Government [Bureau of Prisons] and they have designated your present facility. You're not in Immigration custody. So I can't consider this at this point." He then adjourned the hearing so petitioner could secure representation. One week later, petitioner filed a written motion for a change of venue, arguing that a transfer to New York would allow him to obtain counsel and would enable his family, friends and a former employer to testify to his "good conduct since he first came to the United States." Petitioner's wife, mother and siblings reside in the New York area. Petitioner has a child in Guyana by another woman to whom he sends somewhat regular support.[2]

When the deportation hearing resumed on March 10, 1993, Judge Zlatow denied petitioner's motion, again explaining that a change of venue was precluded because petitioner was in the custody of the Federal Bureau of Prisons, and the hearing was adjourned to April 14 because petitioner had not secured counsel. After a further adjournment at the request of the INS, the hearing resumed on June 16, 1993. Petitioner, who still did not have counsel, explained to Judge Zlatow that he was unable to afford the fee charged by the lawyer to whom he had been referred. The judge, however, proceeded with the hearing, determining that the INS had by clear and convincing evidence established petitioner's deportability as an aggravated felon and controlled substance offender. Petitioner, being asked, designated Guyana as the country to which he wanted to be deported in the event of deportation. He then applied for discretionary relief from deportation pursuant to § 212(c) of the Immigration and Nationality Act, and Judge Zlatow adjourned the hearing so petitioner could gather evidence in support of this application.

---

* Honorable Richard Owen, of the United States District Court for the Southern District of New York, sitting by designation.

1. 8 U.S.C. § 1182(c).

2. We note, however, that in his brief to the Board of Immigration Appeals he denied knowing anyone or having any "relatives" in Guyana.

The 212(c) hearing next resumed on August 25, 1993, before a different immigration judge, Judge John Duck. Since petitioner had no witnesses to present, the hearing consisted mainly of questioning by Judge Duck, who at its close enumerated the factors he had before him, including that petitioner came here when he was thirty and had been here but four years when his criminal problems began, culminating in two separate drug convictions, state and federal, one for conduct while on bond from the other. Judge Duck also considered petitioner's family ties as well as his employment record, noting, however, that petitioner had filed a tax return for only the year 1986.[3] Petitioner was asked about military and community service, but acknowledged he had neither. Thereafter, Judge Duck rendered an oral ruling denying petitioner's claim for a waiver of deportation and ordering him deported to Guyana. Petitioner appealed the denial of the waiver to the Board of Immigration Appeals, which denied the appeal in an opinion dated January 13, 1994. The Board noted that petitioner's criminal history was a serious adverse factor weighing heavily against petitioner in the discretionary balancing of factors required by 212(c). It stated that even considering petitioner's family ties to be an outstanding equity, petitioner failed to demonstrate enough favorable factors to merit a waiver of deportation. The opinion addressed the venue issue, and while concluding that Judge Zlatow had earlier committed no error by denying the motion for a change of venue,[4] it also concluded that in the total picture, petitioner had demonstrated no prejudice resulting from the denial. This petition for review of the Board's order followed.

▮▮▮ Petitioner argues that his motion for a change of venue was improperly denied. Venue lies at the Office of the Immigration Judge where the charging document is filed. 8 C.F.R. § 3.20(a). However, an immigration judge may change venue "for good cause" upon motion by one of the parties. *Id.* at § 3.20(b). Good cause is determined by balancing such factors as administrative convenience, the alien's residence, the location of witnesses, evidence and counsel, expeditious treatment of the case, and the cost of transporting witnesses and evidence to a new location. *See, e.g., Matter of Rahman,* 1992 WL 195808, 1992 BIA LEXIS 15 (1992); *Baires v. INS,* 856 F.2d 89, 92–93 (9th Cir. 1988); *Matter of Velasquez,* 19 I. & N.Dec. 377, 382–83 (BIA 1986). A decision regarding venue is discretionary, and is reviewable only for abuse of discretion. *Chow v. INS,* 12 F.3d 34, 39 (5th Cir.1993).

Petitioner contends that Judge Zlatow abused his discretion by concluding that he had no power to consider the issue, which necessarily precluded his considering any of the factors relevant to a finding of good cause. We agree and conclude Judge Zlatow was in error. While the INS contends in support of Judge Zlatow's determination that the Immigration and Nationality Act requires expedited deportation proceedings for aliens who, like petitioner, have been convicted of aggravated felonies,[5] nowhere does the Act require that, in order to expedite proceedings, no change of venue may be granted. Such a conclusion would create an impermissible conflict between the requirement of expedited proceedings and a meritorious showing of good cause in an appropriate case. Accordingly, aliens incarcerated after conviction for aggravated felonies may, pursuant to 8 C.F.R. § 3.20(b), be granted a change of venue for deportation hearings upon a showing of good cause. The expedited deportation requirement of 8 U.S.C. § 1252a is not a per se prohibition against any venue change. Thus here, the failure to even entertain the motion for a change of venue constituted an abuse of discretion.

▮▮▮ This, however, does not end the inquiry in this case because petitioner must still show prejudice resulting from Judge Zlatow's failure to consider his motion for a

---

3. While at one later job petitioner's taxes were withheld, petitioner worked almost a year as a taxi driver and paid no taxes, and at another job he worked off the books.

4. The Board glossed over the fact that Judge Zlatow had actually declined to consider the issue of a change of venue, *see infra.*

5. *See* 8 U.S.C. § 1252a.

change of venue, and we conclude that petitioner has not made such a showing. At the outset, it is well-settled that the Board of Immigration Appeals can undertake *de novo* review of an immigration judge's decision, and the Board here did review *de novo* the record eventually made by Judge Duck and determined that good cause for a venue change did not exist. *See Woodby v. INS,* 385 U.S. 276, 278 n. 2, 87 S.Ct. 483, 484 n. 2, 17 L.Ed.2d 362 (1966); *Hazzard v. INS,* 951 F.2d 435, 440 n. 4 (1st Cir.1991). In its opinion dated January 13, 1994, the Board stated:

> From our review of the record, we conclude that [Immigration Judge Zlatow] committed no error when he reasoned that this interest of the respondent was outweighed by the competing interest of the Service to economically and expeditiously proceed in this matter. A change of venue in this case would have substantially prejudiced the Government by forcing it to bear the cost of transportation and detention, as well as the risk of respondent's flight from custody.

We note that the opinion is somewhat disingenuous, since there is no indication in the record that Judge Zlatow reasoned as the Board claims he did. Nevertheless, we are satisfied that the Board did review the entire record and determined in a sufficient exercise of discretion that a balancing of factors militated against a venue change, as we now discuss.

Since the INS's change-of-venue regulation does not reflect a fundamental right derived from the Constitution or Federal law, an incorrect decision under that regulation would entitle petitioner to a remand only if he can show that it caused him prejudice. *Waldron v. INS,* 17 F.3d 511, 518 (2d Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994). In order to demonstrate prejudice, petitioner must

show that the denial of the venue change affected either the outcome or the overall fairness of the 212(c) proceeding. *Id.* at 519. When considering a 212(c) application, an immigration judge "must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country." *Matter of Marin,* 16 I. & N. Dec. 581, 584–85 (BIA 1978); *accord Douglas v. INS,* 28 F.3d 241, 243–44 (2d Cir.1994). Adverse factors include: the nature and circumstances of the exclusion ground at issue, the presence of additional immigration law violations, the existence of a criminal record and its nature, recency and seriousness, and the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident. *Marin,* 16 I. & N. Dec. at 584–85. Favorable considerations include: family ties within this country, residence of long duration in this country, evidence of hardship to the alien and alien's family upon deportation, Armed Forces service, employment history, community service, property or business ties, evidence attesting to good character, and, in the case of one convicted of criminal conduct, proof of genuine rehabilitation. *Id.* Where, as in this case, an alien is deportable by reason of two narcotics convictions, the alien must make a showing of unusual or outstanding countervailing equities to obtain a waiver of deportation. *Correa v. Thornburgh,* 901 F.2d 1166, 1170 (2d Cir.1990).

In denying petitioner's 212(c) application, Judge Duck undertook the required balancing of factors and considered thirteen factors in total,[6] nine of which would have been favorable, but the judge found actual evidence of only three. Judge Duck acknowledged that petitioner had a history of employment, noting that that history was marred by a substantial failure to file returns

---

6. Judge Duck examined the following negative factors: the nature and underlying circumstances of the exclusion ground at issue; the presence of additional immigration law violations; the existence and nature of a criminal record; and evidence indicative of bad character or undesirability. He considered the following positive factors: family ties within the United States; residence of long duration in the country; evidence of hardship to the alien and his family in the event of deportation; service in the armed forces; history of employment; existence of property or business ties; community service; evidence indicative of good character; and evidence of rehabilitation. His orally-rendered opinion was six pages in length.

or pay income taxes. He found that petitioner had strong family ties to the United States, noting that petitioner's wife, mother, and some siblings lived in the country, and concluding that this was petitioner's "strongest tie." Judge Duck also found some evidence of good character. However, due to petitioner's convictions for selling drugs, Judge Duck properly determined that a showing of unusual· or outstanding equities was required to avoid deportation.[7] His conclusion was: "After carefully considering and reviewing all of the favorable factors in this particular case, I cannot find that the respondent has shown unusual, outstanding equities." In its opinion affirming Judge Duck's ruling, the Board again explored several relevant factors, including length of residence and any evidence of rehabilitation. The Board, too, reiterated that petitioner's criminal history was a "serious adverse factor, sufficient to warrant a showing of unusual or outstanding equities," and, significantly, concluded that "[e]ven considering the [petitioner's] family ties to be an outstanding equity, we cannot conclude that overall, the [petitioner] has demonstrated other favorable factors sufficient to merit a grant of the waiver."

Given the foregoing, petitioner's contention that the denial of the venue change prejudiced his 212(c) application by impairing his ability to provide evidence of the favorable factors of family ties and employment history—and thus, prior good conduct—fails. Both Judge Duck and the Board of Immigration Appeals gave full credit to the very factors petitioner claims he was hindered from demonstrating. In addition, one of the two factors, the history of employment, was diminished by a failure to pay income taxes, and the factors at issue were only two of nine potentially positive factors considered by Judge Duck. Neither he nor the Board found any evidence of the other seven factors which would have been deemed favorable, and petitioner does not claim that a change of venue would have adduced evidence of these factors. Moreover, due to his drug convictions, it was incumbent upon petitioner to demonstrate unusual or outstanding equities, and the Board specifically stated that even considering petitioner's family ties to be an outstanding equity, he still did not warrant a waiver of deportation. Accordingly, petitioner has made no showing that having any family member or employer testify in person[8] would have furthered his position, and has thus failed to prove prejudice resulting from their absence.

We find petitioner's remaining contentions to be without merit. Only one requires discussion. Petitioner contends that the denial of a change of venue infringed his right to present evidence. While clearly there is such a right,[9] that right could have been exercised by the presentation of affidavits where witnesses could not attend. Petitioner was given an instruction sheet explaining his right to present affidavits, and he had roughly six months to gather evidence for the 212(c) hearing, ample time to secure affidavits or even letters from witnesses. Petitioner was aware of this ability, for he did present other documentary evidence, including a good conduct letter and prison course completion certificates.

Given all the foregoing, the petition is denied.

---

7. Judge Duck's questioning of petitioner flowed refreshingly directly from this principle of law:

Q: Well, you know the damage drugs are doing to this country. Don't you?
A: Yes, sir.
Q: Then why should you be allowed to stay?

8. Petitioner could have submitted affidavits, *see infra,* but did not.

9. *See Baires v. INS,* 856 F.2d 89, 93 (9th Cir. 1988); 8 U.S.C. § 1252(b)(3); 8 C.F.R. § 242.16(a).